# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **REBECCA WALTERS, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.:  **2:07-cv-809-RDP** |
| } | |
| **USF HOLLAND, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

Before the court is Defendant USF Holland's ("Holland") Motion for Partial Summary Judgment (Doc. #57), filed June 27, 2008.  Plaintiffs filed their response brief (Doc. #61) on July 25, 2008.  Defendant filed its reply brief (Doc. #63) on August 5, 2008, bringing the issues raised by Defendant's Motion under submission.

**I.     RELEVANT UNDISPUTED FACTS**[1]

On April 12, 2007, a car occupied by Plaintiffs' decedents and a Holland tractor trailer driven by Mr. Leroy Grace were involved in a motor vehicle accident at or near Exit 304 on I-65 in Alabama.  Plaintiffs' decedents died in the accident.  (Doc. #1 at 3).

Holland is incorporated in Michigan.  Its headquarters are in Holland, Michigan.  (Doc. #58, Ex. A at 1).  Mr. Grace lives in Tennessee.  (Doc. #58, Ex. B at 7).  On September 7, 1999, Holland hired Mr. Grace to work as a linehaul driver.  (Doc. #58, Ex. A at 1).  While employed by Holland, Mr. Grace has been domiciled, was provided vehicles, reported for work, received assignments, and

---

[1] If facts are in dispute, they are stated in the manner most favorable to Plaintiff, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

was trained in Tennessee. (*Id*.). Mr. Grace's direct supervisors are located in Tennessee. Holland's Central Dispatch, which supervises Mr. Grace and other Holland drivers, is located in Michigan. (*Id*. at 1-2). Holland decided how and when Mr. Grace would deliver freight. (Doc. #56, Ex. A at 3). On April 11, 2007, Mr. Grace received an assignment from Holland to transport freight for Holland from Nashville, Tennessee to Alabaster, Alabama. (*Id*.; Doc. #62, Ex. A at 106).

Mr. Grace has held a valid Tennessee Commercial Driver's License at all times during his employment with Holland. (Doc. #58, Ex. A at 2). Before working for Holland, Mr. Grace drove commercial vehicles for approximately ten years. (*Id*.). Before hiring Mr. Grace, Holland performed a background check showing him to be a qualified and competent driver. (*Id*.). Holland also required Mr. Grace to pass a drug test, a driving test, and written tests to demonstrate his knowledge of the Federal Motor Carrier Safety Regulations, the Federal Hazardous Materials Regulations, Holland policies, and general information about driving a commercial vehicle. (*Id*.). Mr. Grace passed all the tests. (*Id*.). Immediately after hiring Mr. Grace, Holland sent him to mandatory linehauler driver orientation training in Holland, Michigan. (*Id*.). Mr. Grace participated in regular safety training and received materials relating to safety and other training at the Nashville terminal. (*Id*.). During the seven and a half years that Mr. Grace drove for Holland before the accident, he drove 758,072 miles across the United States. (*Id*.).

During his tenure with Holland, Mr. Grace received several traffic citations of which Holland was aware and Mr. Grace was involved in three accidents with other vehicles (not including the accident at issue here).[2] (*Id*.). On April 12, 2001, Mr. Grace received a traffic citation for a third lane violation in the State of Indiana. (Doc. #62, Ex. C). On November 29, 2004, Mr. Grace was

---

[2]There is a dispute over the nature and severity of Mr. Grace's previous accidents.

cited for "failure to reduce speed to avoid an accident," which caused an accident for which Mr. Grace was suspended by Holland, citing it as a "serious, preventable accident." (Doc. #62, Ex. E and A at 100-11). Thereafter, Holland sent a letter to Mr. Grace saying "[p]lease consider this your final letter of warning for preventable accidents. Further incidents of this nature will result in immediate discharge." (Doc. #62, Ex. E at 4). On November 18, 2005, while driving in his personal car, Mr. Grace received a citation for failure to obey traffic instructions. (*Id*. at 3). In late 2006 or early 2007, Mr. Grace was again suspended by Holland, this time for two weeks, for what Holland called "a serious preventable accident" that occurred on October 5, 2006. (*Id*. at 102-05; Doc #62, Ex. F at 3). Mr. Grace received another "final letter of warning" from Holland as a result of this accident. (Doc. #62, Ex. F at 3). On December 8, 2006, Mr. Grace received a citation for illegal parking on the interstate. (Doc. #62, Ex. G). Mr. Grace stated that he parked on the interstate ramp because "he was tired." (Doc. #62, Ex. A at 106). It is undisputed that Holland had full knowledge of each accident, citation, and warning letter prior to the accident at issue in this case. (Doc. #62, Ex. C, D, E, F, and G).

Holland never received a complaint from the public about Mr. Grace's driving. (Doc. #58, Ex. A at 2). Mr. Grace took and passed four drug tests while working for Holland. (*Id*. at 3). On April 11-12, 2007, Mr. Grace held a valid 30-day Department of Transportation medical certification indicating he was medically fit to drive. (*Id*. at 3-5)

Both Plaintiff and Defendants admit that a hospital urine screen performed on Mr. Grace after the accident showed a positive reading for opiates, however, the parties dispute whether Mr. Grace was impaired in any way at the time of the accident. (Doc. #58, Ex. D at 1). Four months before the accident, Mr. Grace received a prescription for Lortab 5 to treat pain from an on-the-job back

3

injury. (Doc. #62, Ex. A at 106). After the accident, Mr. Grace told the emergency room charge nurse, Alicia Edwards, that he was taking Lortab 10 as needed for back pain. (Doc. #62, Ex. M at 31-32). Plaintiffs' experts have testified that Mr. Grace likely took Lortab six to sixteen hours prior to the accident. (Doc. #58, Ex. C at 77-78, 86-87, and Ex. E at 62).

On the night of the accident, Mr. Grace went on duty at 10:00 p.m. and left the Nashville terminal around 11:02 p.m. (Doc. #62, Ex. A at 25-28). During the drive, Mr. Grace became tired and wanted to take a nap. He pulled over at the I-65 Elkmont exit, Exit 361, but did not stop because the ramp was "too short." (Doc. #62, Ex. K at 31.) Less than thirty miles later, at around 12:30 p.m., Mr. Grace stopped at the Pilot Truck Stop at Exit 334 to get a sandwich and a drink at Wendy's. (*Id.* at 25). Mr. Grace left the Priceville exit and traveled 29 or 30 miles before colliding with Plaintiffs' decedents. (*Id.* at 41-42, Doc. #62, Ex. A at 43-44).

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgement is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

### III. ANALYSIS

Defendant argues it is entitled to summary judgment for the following reasons: (1) the Alabama Wrongful Death Statute does not permit recovery against Holland for Negligent entrustment, hiring, retention, and supervision because these alleged acts and omissions occurred outside of Alabama; (2) Plaintiff cannot establish the notice necessary under Alabama law to support direct negligence claims against Holland; (3) Plaintiff cannot establish the high culpability required of Defendants to support imputed and direct wantonness claims; (4) Tennessee law would not allow recovery; and (5) the United States Constitution prevents an Alabama court from awarding punitive damages based on Holland's conduct outside of Alabama. These arguments will be addressed in turn.

### A. RECOVERY UNDER THE WRONGFUL DEATH STATUTE FOR HOLLAND'S ACTIVITIES OUTSIDE OF ALABAMA

Defendant argues that under the Alabama wrongful death statute, Ala. Code 1975 § 6-5-410, Plaintiff cannot recover against Holland because its alleged negligent activity occurred outside the state of Alabama. As interpreted by the Alabama Supreme Court, "the Alabama statute allowing

recovery for a wrongful act causing death will not support an action where the wrongful act was committed in another state." *Louisville & N.R. Co. v. Williams*, 21 So. 938, 939 (Ala. 1897). However, Holland's argument is off the mark because here the act or omission that Plaintiffs challenge occurred in Alabama, not Tennessee or Michigan.

The Alabama Supreme Court announced the rule governing this case in *Alabama G.S.R. Co. v. Carroll*. 11 So. 803 (Ala. 1892). In that decision, the court analyzed a Mississippi case, *Chicago, St. Louis & New Orleans R.R. Co. v. Doyle*, and adopted its conclusion that, though a railroad's corporate officers may be located in one state, the corporation is present with the train every inch of the journey. 60 Miss. 977, 984 (Miss. 1883). In *Doyle*, a train collision occurred in Tennessee resulting from the negligence of a dispatcher in Mississippi. The court held that Tennessee law, the law of the place of the injury, rather than Mississippi law, the law of the place of the omission on the part of the corporate officer, governed the case. *Id*. at 984. It came to this conclusion by identifying the location of the negligence when acts or omissions in one state lead to injuries in another:

> The true view is that the legal entity called the corporation is omni-present on its railroad, and the presence or absence of negligence with respect to an occurrence at any point of the line is not to be resolved by the place at which an officer or employe [*sic*] was stationed for duty. The question is as to duty operating effectually at the place where its alleged failure caused harm to result. The locality of the collision was in Tennessee. It was there, if any where, that the company was remiss in duty, for there is where its proper caution should have been used.

*Carroll*, 11 So. at 806 (*quoting Doyle*, 60 Miss. at 984). Therefore, contrary to Defendant's assertion that any alleged negligent acts and omissions committed by Holland and its officers occurred in Tennessee and Michigan, Defendant's duty traveled with the Holland vehicle into the state of

Alabama, and the breach of that duty, if any, occurred in Alabama, the situs of the injury. For purposes of a *Williams* analysis, the "wrongful act" occurred in Alabama, not in Tennessee or Michigan. The Alabama wrongful death statute not only reaches the alleged acts, omissions, or negligence for purposes of negligent entrustment, hiring, retention, and supervision on the part of Holland, but also is the *only* law that reaches the alleged negligence.

### B. HOLLAND'S NOTICE FOR PURPOSES OF DIRECT NEGLIGENCE

Defendant's second argument is that Plaintiff cannot establish a crucial element of negligent entrustment and negligent supervision under Alabama law: that Holland had notice of Mr. Grace's incompetence.

Notice of an employee's incompetence is an element to negligent entrustment and supervision claims under Alabama law. This requires affirmative proof that an employer had actual or constructive knowledge of the employee's incompetence to find notice. *See, e.g.*, *Mason v. Mew*, 475 So.2d 854 (Ala. 1985) ("[M]anifestations of the incompetence of the driver [are] a basic requirement of a negligent entrustment action."); *Sanders v. Shoe Show, Inc.*, 778 So.2d 820, 824 (Ala. Civ. App. 2000) ("[A] crucial element [of plaintiff's] claim of negligent or wanton hiring and supervision is proof that the defendants actually knew, or should have discovered in exercise of due diligence, that [the defendants' employee] was likely to [engage in tortious conduct]."); *Lane v. Central Bank of Alabama, N.A.*, 425 So.2d 1098 (Ala. 1983) (knowledge an element of negligent supervision claim).

While working for Holland, Mr. Grace received at least four traffic citations and was involved in three accidents (other than the accident at issue here). After two separate accidents, which Holland itself characterized as "serious preventable accidents," Mr. Grace received letters of

warning indicating that any further preventable accidents would lead to discharge.  The court finds that a genuine issue of material fact exists as to whether Mr. Grace's driving record put Holland on sufficient notice for purposes of Plaintiffs' negligent entrustment and negligent supervision claims. Therefore, summary judgment is inappropriate on those claims.

### C.     WANTONNESS

Defendant's third argument is that Holland and Mr. Grace's conduct does not rise to the level of culpability required for wantonness.

The Alabama Supreme Court has clarified the definition of wantonness in *Alfa Mutual Insurance Co. v. Roush*, 723 So.2d 1250, 1256 (Ala.1998):

> 'Wantonness' is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code 1975, § 6-11-20(b)(3). 'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala.1994).
>
> This Court has often reiterated that while ordinary negligence involves inadvertence, wantonness requires a showing of a conscious or an intentional act. *Scott v. Villegas*, 723 So.2d 642, 643 (Ala.1998); *Newman v. Bankers Fid. Life Ins. Co.*, 628 So.2d 439, 443 (Ala.1993). However, "'the actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence.'" *Scott v. Villegas*, 723 So.2d at 643, *quoting Hamme v. CSX Transp., Inc.*, 621 So.2d 281, 283 (Ala.1993).

*Hicks v. Dunn*, 819 So.2d 22, 24 (Ala. 2001) (*quoting Roush*, 723 So.2d 1250, 1256).

In this case, a genuine issue of material fact exists as to whether Defendants acted wantonly. There is sufficient evidence in the record to raise a jury question of whether Mr. Grace was impaired at the time of the accident.  Furthermore, there is a question of whether Mr. Grace continued to drive

knowing he was impaired by fatigue and/or Lortab.[3]  A jury question also exists as to whether Holland knew that Mr. Grace was unfit to drive at time of the accident, yet, with recklessness or conscious disregard to the rights and safety of others, allowed him to do so.  For these reasons, summary judgment on the wantonness claims is due to be denied.

    D.    **TENNESSEE LAW**

Defendant's arguments in Part Two of its brief analyze the viability of Plaintiffs' claims under Tennessee law.  Because all claims in this case are governed by Alabama law, not Tennessee law, these arguments are moot.

The relevant choice of law rule in Alabama was established in *Carroll*. 11 So. at 803.  In that case, Carroll, an Alabama, resident was employed as a brakeman by Alabama Great Southern Railway, an Alabama corporation that operated a railroad extending from Chattanooga, Tennessee, through Alabama, to Meridian, Mississippi.  Carroll suffered an injury in Mississippi as a result of a link breaking between two cars in a freight train proceeding from Birmingham, Alabama to Meridian.  The evidence tended to show that the link which broke was a defective link, and that it was in a defective condition when the train left Birmingham.  *Id*. at 803-04.  The negligent act that caused the link to break happened in Alabama, and employees had a duty to inspect the link at Chattanooga, Birmingham, and some points between Birmingham and the place where the link broke.  Despite the fact that most, if not all, of the negligent activity occurred in Alabama, the court held that Mississippi law, the law of the place of the injury, applied, not Alabama law.

---

[3]"A driver of an automobile is not guilty of wanton or wilful misconduct in falling [asleep] while driving unless it appears that he continued to drive in reckless disregard of premonitory symptoms." *Lankford v. Mong*, 214 So.2d 301, 303 (Ala. 1968) (*quoting* 28 A.L.R.2d 12, 72 (1953)).

> It is admitted, or at least cannot be denied, that negligence of duty unproductive of damnifying results will not authorize or support a recovery. Up to the time this train passed out of Alabama no injury had resulted. For all that occurred in Alabama, therefore, no cause of action whatever arose. The fact which created the right to sue,-the injury,-without which confessedly no action would lie anywhere, transpired in the state of Mississippi. It was in that state, therefore, necessarily that the cause of action, if any, arose; and whether a cause of action arose and existed at all, or not, must in all reason be determined by the law which obtained at the time and place when and where the fact which is relied on to justify a recovery transpired.

*Id*. at 806-07. The law of the place of the injury applies rather than the law of the place of negligent acts or omissions that ultimately cause the injury.

Defendant's assertion that the law of Tennessee governs this action is wide of the mark. The injury at issue in this case occurred in Alabama. Alabama law governs all of Plaintiffs' claims.

### E. CONSTITUTIONALITY OF PUNITIVE DAMAGES

Defendant's final argument is that Plaintiff cannot recover punitive damages from Holland based on Holland's conduct in Tennessee and Michigan. An award of punitive damages unsupported by a legitimate state interest is, unquestionably, unconstitutional. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996). "A state cannot punish a defendant for conduct that may have been lawful where it occurred." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). This argument rests on the same flawed view of the legal location of the alleged negligence espoused in Defendant's first argument. As explained above, Defendant's duties to Plaintiffs traveled with its vehicle into Alabama. Any breach of those duties occurred in Alabama. A punitive damage award that is based on sufficient evidence and otherwise proper would not violate the Due Process Clause of the Fourteenth Amendment.[4]

---

[4]Defendant's assertion that Alabama does not have a legitimate state interest in awarding punitive damages in this type of case not only fails under the rule in *Carroll*, but also fails as a matter

## IV.      CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be denied. (Doc. #57). A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this       24th       day of October, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

of logic. It is absurd to suggest that Alabama has no legitimate state interest in policing the activities of corporations that hire truck drivers, entrust them with tractor trailers, and put them on routes across Alabama roads.

11